(173 App. Div. 40)

HART v. PFIZER et al.

(Supreme Court, Appellate Division, First Department.    June 2, 1916.)

GUARANTY ⬩26—TRIAL—QUESTION FOR JURY.

    In an action against the guarantor of secured notes, who later, in renewing his contract of guaranty, on the granting of an extension, became absolutely liable, whether the guarantor's agreement was induced by fraudulent representations, and he incurred liability in reliance on such representations, *held* for the jury, since the only evidence in support of these contentions, although uncontroverted, was the testimony, containing inconsistencies and contradictions, of the guarantor, who was interested, and of the principal.

    [Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 106; Dec. Dig. ⬩26.]

Appeal from Trial Term, New York County.

Action by Frieda Hart against Emile Pfizer and another. From a judgment for the named defendant, and from an order denying a motion for new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SMITH, and PAGE, JJ.

Max D. Steuer, of New York City (Gerald B. Rosenheim, of New York City, on the brief), for appellant.

Abram I. Elkus, of New York City (Burgess Osterhout, of New York City, on the brief), for respondent.

LAUGHLIN, J. This is an action on an agreement in writing, made between Sara Frankl, plaintiff's assignor, and the defendants, on the 15th day of September, 1913, to recover $15,000, alleged to be due and payable by the defendants thereunder. In a preamble to the agreement, it is recited that the plaintiff's assignor held the bond of the defendant, Charles Pfizer, Jr., conditioned for the payment of $15,000, on the 1st day of February, 1914, together with interest, and a mortgage on a certain leasehold as security therefor, and also the guaranty of the defendant Emile Pfizer for the payment of any deficiency, that the indebtedness has become due, owing to default in the payment of interest, and that plaintiff's assignor had threatened to enforce immediate payment, but had been requested by the defendants to extend the time of payment to the 1st day of August, 1914, on certain conditions therein specified; and the agreement witnessed that, in consideration of the premises and of the agreement by the defendants to pay the indebtedness on the 1st day of August, 1914, and interest as the same became due, the plaintiff's assignor so extended the time of payment.

The defendants are brothers. The defendant Charles Pfizer, Jr., defaulted, and judgment was not taken against him; but the defendant Emile Pfizer interposed an answer, by which he put in issue certain of the allegations of the complaint, and set up three separate defenses. On the trial he withdrew the denials and assumed the affirmative on his separate defenses. The first defense pleaded is that there was

no consideration for the agreement upon which the action is based, or for the agreement of guaranty, of which it is a renewal or extension. The second defense pleaded is in substance that on or about the 22d day of January, 1913, one Max Hart, the husband of the plaintiff, acting for the firm of Frankl & Steinhacker, who held certain promissory notes aggregating the sum of $23,365.97, on which the defendant Charles Pfizer, Jr., was indorser, falsely and fraudulently, and with a view to defrauding the respondent by inducing him to make a cash payment thereon, represented to him that said notes were valid, that Frankl & Steinhacker were the true and lawful owners and holders thereof, that the defendant Charles Pfizer, Jr., was liable for the payment thereof, that immediate payment of the notes then due, amounting to $12,000, was insisted upon, and payment of the others as they became due would be insisted upon, and that an action would be brought against Charles to enforce payment unless payment was made; that respondent, believing said representations to be true and relying thereon, and with a view to aiding his brother, paid the sum of $8,365.97 in cash, and his brother Charles executed and delivered to the members of the firm of Frankl & Steinhacker a bond and mortgage for $15,000, being the balance of the total amount unpaid on the notes, and respondent, believing and relying upon said representations, indorsed upon said bond and mortgage a guaranty to pay any deficiency, and thereupon said Max Hart, acting as agent of Frankl & Steinhacker, delivered up and surrendered said notes to respondent; that on or about the 15th day of September, 1913, on the representation of said Max Hart that the bond and mortgage had been assigned to Sara Frankl, respondent paid the interest then due and signed the agreement upon which the action is based, which was, and was intended to be, a renewal or extension of his guaranty indorsed upon the bond, and that he received no consideration for signing the same, or for his guaranty indorsed on the bond, and that the guaranty on the bond and the agreement were wholly without consideration and void; that the representations made by said Max Hart that the respondent's brother Charles was liable on said notes as an indorser, and that the notes were owned by said firm, were false, and were known by him to be false, when made, in that he knew that said firm never parted with any consideration for the notes, and that said firm and said Sara Frankl and the plaintiff were all the agents and representatives of said Max Hart, and had no interest in the notes, or in the bond and mortgage or guaranty, and that said representations were made with a view to obtaining from respondent the cash payment which he made and said guaranty; that, of said notes aggregating $23,365.97, notes aggregating the sum of $10,486.24 were void for want of consideration, and were indorsed and delivered by respondent's brother Charles to said Max Hart for the sole and express purpose of having the same discounted and the proceeds paid over to Charles, but that this was not done; that said Max Hart never parted with any consideration for the notes, and neither he nor the firm he represented ever became the owners or holders of the notes in due course or for value; that one of the other notes, which was for $4,000, had been paid by the respondent's brother Charles, and another for $49.73 was given for interest

on one of the notes, which was to be discounted for the benefit of respondent's brother Charles, and, said note not having been discounted, the note for interest thereon was void for want of consideration. The third defense pleaded is that neither the plaintiff nor her assignor is the owner of the agreement upon which the action is brought, but that said Max Hart is the owner thereof, or is the agent of the owner, and "absolutely controls the acts of the said owner with regard to such alleged agreement, and instigated, directed, and controls" this action.

The defendant Charles Pfizer, Jr., owned and controlled a street railway in Titusville, Pa., and a number of gas and oil companies, and was president of and the principal stockholder in the Charles Pfizer, Jr., Company, a New Jersey corporation, and had extensive business interests. He employed said Max Hart to discount notes for him and for some of his companies. During the period from 1910 to 1915, notes aggregating about $200,000 were delivered to Hart by him for discount. Some of the notes were renewed from time to time. The business transactions between Charles Pfizer, Jr., and Hart were loosely conducted. Hart was not required to, and did not, make prompt and full returns with respect to the discount of the notes, and in some instances a note was renewed by giving several notes for smaller amounts, aggregating the amount of the note renewed, and vice versa. In this manner the business became quite involved.

The transactions upon which the issues in this action depend relate back to the 22d day of January, 1913, at which time nine notes of the companies controlled by Charles Pfizer, Jr., and indorsed by him, aggregating $25,365.97, which had been delivered to Max Hart for discount, or were renewals of such notes, and on which $2,000 concededly had been paid, were outstanding and in the hands of Frankl & Steinhacker. The respondent was the president of the Charles Pfizer Chemical Company, and had an extensive business, and so far as appears he was not connected in business with his brother Charles, nor was Charles interested in his business. Max Hart was present at the trial, but was not called as a witness. The respondent testified that in August, 1912, Hart, whom he did not then know, expressed by telephone a desire to see him on business relating to his brother Charles; that he thereupon called on Hart, who informed him that Charles had become involved with respect to notes of the Titusville Electric Traction Company, and suggested that respondent aid him; that at another interview with Hart later, in which he stated that he was prepared to help Charles, he was informed by Hart about said nine notes; that he promised to investigate, and stated that if he found that the *indebtedness was owing by his brother* he would see that it was paid; that at the suggestion of Hart they met at the place of business of Frankl & Steinhacker a few days prior to January 22, 1913, and saw Steinhacker, and respondent was shown the notes, together with a statement thereof, showing that two of them, one for $8,000 and one for $4,000, were past due, and that $2,000 had been received on account thereof, and the dates when the other notes would fall due, and that the aggregate amount unpaid was $25,365.97, for which Hart represented that

Charles was liable; that subsequently he related to Charles his interviews with Hart, and asked Charles whether he owed the money, and received an answer in the affirmative, or that he "believed" that he owed the debt; that he then stated that if the debt was an honest one he would pay $8,000, and Charles could give a mortgage on his leasehold to secure the payment of $15,000, which Charles agreed to do; that after thus conferring with Charles he saw Hart again and suggested an adjustment of the notes by a cash payment by him of $8,000, and procuring the execution of a mortgage by his brother on the leasehold, which Hart accepted. The respondent further testified that he *relied upon Charles' statement that he owed the money, and on Hart's statement, and that it was because he relied on his brother's statement that he agreed to pay the money and to execute the guaranty,* and that if Charles had told him that the notes were not good, or that he did not owe the money, he would not have advanced the money or have executed the guaranty.

The respondent drew his check for $8,365.97 to the order of Frankl & Steinhacker, and delivered it to Hart, and it was indorsed by said firm and redelivered to Hart for the plaintiff, in accordance with an agreement between her and said firm, by which she undertook to finance the business of the firm. At the time of receiving this check, the firm of Frankl & Steinhacker executed and delivered to the respondent a formal receipt, reciting that they had received from him the sum of $23,365.97 in full of all claims which they held against the two companies which had made the notes, and specifying the cash payment received by them, and that the respondent had agreed to cause a mortgage to be delivered to them on or before February 1, 1913, for $15,000, on said leasehold, *free and clear of all liens and incumbrances,* but that he was not to be liable for the payment of the mortgage; and they thereby expressly relinquished, waived, and abrogated any lien they had on certain bonds, not specified, of the Titusville Electric Traction Company, and canceled and declared null and void any agreement with respect thereto; and the receipt recites an assignment by them to the respondent, as follows:

"We also hereby assign to the said Emile Pfizer all our rights, interests, and holdings, and the said notes this day transferred to the said Emile Pfizer, without recourse to us."

Before the mortgage was executed on the leasehold, it was discovered that there were unpaid taxes thereon amounting to $5,303.90, which evidently it was not convenient for either of the defendants to pay. It was then agreed that the mortgage would be taken subject to the taxes and that the respondent would guarantee it. It was pursuant to that understanding that he subsequently executed the guaranty. Concurrently with the execution of the mortgage, Charles executed an estoppel certificate, which recited that the bond and mortgage were about to be assigned to said Sara Frankl, who is the mother of Frankl, of Frankl & Steinhacker, and the sister of Max Hart. The bond and mortgage were executed to said firm, and assigned the same day to Sara Frankl, who it is conceded took them as a dummy, either for Max Hart or for the plaintiff.

The agreement upon which the action is brought was executed, as

therein recited, to prevent the foreclosure of the mortgage on account of default in the payment of interest on August 1, 1913. The day after it was executed, it was assigned, together with the bond and mortgage, by said Sara Frankl to the plaintiff, without other consideration than that existing on account of the plaintiff's agreement with respect to financing the business of Frankl & Steinhacker. The respondent paid the installments of interest falling due in August, 1913, and in February and August, 1914, aggregating $1,350. This action was commenced on the 23d of October, 1914. The respondent testified that he had no notice or knowledge that his brother was not liable on the notes until September or October, 1914, when further information with respect thereto was derived from his brother.

The evidence showed, and it is now conceded, that there was a good and sufficient consideration flowing to Charles with respect to five of the notes, aggregating $10,830; but with respect to the others evidence was introduced in behalf of the respondent tending to show that there was no consideration for three, aggregating $10,535.97, for the reason that Hart, through whom the plaintiff derived title, parted with no consideration therefor, and with respect to the remaining note for $4,000 that there was both lack of consideration for the same reason, and also payment.

The only questions submitted to the jury were whether these three notes were without consideration flowing from Hart to Charles, and whether the note for $4,000 was paid, which it is to be inferred from the charge was a theory of the case originating with the trial court; and the jury were instructed that without regard to any other question, if they found a failure of consideration—that is, that Hart failed to discount these notes and account for the proceeds—with respect to the three notes, and that the other was paid, their verdict should be for the respondent. At the close of the charge one of the jurors inquired whether the jury could bring in a verdict for the plaintiff for a less amount than that demanded, whereupon the court instructed them that they must find for the plaintiff for the whole amount, or for the defendant.

The learned counsel for the appellant argues that the verdict is against the weight of the evidence on the issues which were submitted to the jury, and there is much force in that contention. We do not, however, deem it necessary to analyze the evidence and point out why that is so, for on no theory could the verdict be permitted to stand, even if it were sustained by a preponderance of the evidence. Assuming the evidence introduced in behalf of the respondent to be true with respect to the four notes, all of which he claims were without consideration, and one of which he claims was paid, there would still be a balance of $2,464.03 principal owing on the five notes, for which it is conceded there was a good consideration, over and above $8,365.97 paid by the respondent. Although these four notes aggregate $14,535.97, inasmuch as a payment of $2,000 on account thereof was credited by Hart, acting for Frankl & Steinhacker, in arriving at the balance of $23,365.97, claimed by him to be owing on the nine notes, these four notes represent only $12,535.97 of the indebtedness claimed, for which the check for $8,365.97 and the bond and

mortgage were given, leaving a valid indebtedness amounting to $10,-830, as already stated, only $8,365.97 of which has been paid. As already stated, the respondent paid $1,350 for interest due on the bond and mortgage, which represented the balance of the indebtedness evidenced by the nine notes, over and above the payment of $8,365.97. If the determination of the jury were sustained, it is evident that approximately five-sixths of the interest paid by respondent was on account of indebtedness which the verdict shows did not exist; but it is manifest that, even if that should be applied to the principal of of the indebtedness existing, even according to the verdict of the jury, there would still remain upwards of $1,000 of valid indebtedness, the payment of which the respondent first guaranteed, and then absolutely agreed to pay. There would therefore, in any event, be only a partial failure of consideration.

No exception appears to have been taken to the charge that the plaintiff must recover the entire amount claimed or nothing; but appellant had duly excepted to the charge confining the issues to be passed upon by the jury to the two questions submitted, and presented requests for a submission of the case to the jury on the theory on which plaintiff had tried the case, viz., that if the firm of Frankl & Steinhacker were bona fide holders of the notes for value and received them before maturity, then the surrender of the notes to defendant by the firm constituted a good consideration for his payment and agreements. We do not wish to be understood as agreeing that appellant's said theory was sustained by the evidence, for, on the contrary, we think it doubtful whether there was sufficient evidence in support of the contention that said firm were bona fide holders of the notes in due course to take the case to the jury. We refer to plaintiff's theory to excuse the failure of counsel to be prepared to know that in any event there would be a balance in favor of plaintiff on the theory on which the case was left to the jury. The court misstated the aggregate amount of the three notes, which doubtless accounts for the charge that plaintiff was entitled to recover all or nothing. Counsel for respondent even now makes an argument to the effect that the payment made by respondent more than paid the five notes.

The only theory on which all liability on the agreement could be avoided would be upon a finding that the respondent was induced to execute it by material false and fraudulent representations; but the difficulty with that is that no such question was submitted to the jury, although requests for instructions were presented by the plaintiff to have the jury pass upon the question as to whether the defendant relied upon the representations of Hart in making the payment and executing the guaranty and in making the agreement on which the action is brought, and whether Hart made any false representations to him. The learned counsel for the respondent ingeniously contends, in support of the judgment, that the only controverted questions of fact were with respect to whether the three notes were without consideration, and whether the fourth was paid, and that all other facts essential to show fraud on the part of Hart in making the representations, and with respect to whether or not the respondent relied upon them, were shown by uncontroverted evidence. The evidence relating

to these matters consisted of the testimony of the respondent and of his brother Charles, which, although uncontroverted, cannot be held to establish the facts as matter of law, owing to the interest of the respondent, and to the inconsistencies and contradictions in his testimony, and the inconsistencies and contradictions in the testimony of Charles, particularly in view of the testimony of the respondent that he relied upon the representations of Charles. Two further essential facts, therefore, to avoid all liability on the part of the respondent, namely, that Hart made false and fraudulent representations with respect to the indebtedness for which Charles was liable, and that the respondent incurred the liability in reliance thereon, were neither found by the jury, nor established by evidence that should have been accepted as matter of law.

We do not deem it necessary to discuss the other questions argued, for they may be obviated, or may not arise in the same form, on a new trial.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event; the findings of the jury, upon which the reversal and the new trial are ordered, to be specified in the order, which will be settled on notice. All concur.